THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | |
| Plaintiff, | |
| v. | Crim. No. 21-399 (ADC) |
| **JOSE LATORRE-CACHO,** | |
| Defendant. | |

**OPINION AND ORDER**

Before the Court is José LaTorre-Cacho's ("defendant") motion to suppress evidence. **ECF No. 45**.[1] For the following reasons, the motion is **DENIED**.

**I.   Procedural background**

**A.   Motion to suppress**

Defendant filed a motion to suppress evidence obtained by the government on the day of his arrest at the Jardines del Paraíso Public Housing Project ("Jardines del Paraíso"). **ECF No. 45**. Defendant included an affidavit with very general allegations in support. **ECF No. 51**. The government filed a response. **ECF No. 60**.

---

[1] The government originally requested the Court to deny defendant's untimely motion to suppress on its face because the deadline to file dispositive motions had elapsed. **ECF No. 47**. Although the government's request was not unreasonable, considering that a Superseding Indictment was returned in March 2023 the Court, in its discretion, will allow the motion even if filed after the expiration of Court sanctioned deadlines.

In essence, defendant challenges the government's version of the events that led to his arrest and the search and seizure of certain items. According to defendant, on October 12, 2021, he was smoking near his apartment at the Jardines del Paraíso, when suddenly one of "several" agents who entered the housing project "drew his firearm and pointed it at him while identifying himself as a law enforcement officer." **ECF No. 45** at 1. Following the instructions of the agents, defendant raised his hands and then placed them on the wall next to him. *Id.*, at 2. One of the agents searched him and "allegedly"[2] found a Glock firearm, a magazine with eleven bullets and other items. Defendant argues he was subjected to an unlawful search and seizure. Accordingly, he asks the Court to suppress all items "allegedly" seized by the government pursuant to the protections of the Fourth Amendment. *Id.*; *see* U.S. CONST. amend. IV.

On April 21, 2023, the government filed its response. **ECF No. 60**. In essence, the government argued that under the specific facts of this case, defendant was arrested and searched after he "voluntarily informed police that he possessed a firearm," which the government contends, "mak[es] the Fourth Amendment inapplicable." *Id.*, at 2. In any case, the government's argument continues, the search and arrest "was reasonable under the *Terry*[3] doctrine." *Id*.

---

[2] The Court will continue to underscore defendant's use of the term "allegedly" in connection with the items seized by the government for a very specific reason explained herein further below.
[3] Referring to *Terry v. Ohio*, 392 U.S. 1, 22 (1968).

**B.    Suppression hearing**

On April 26, 2023, the Court held a hearing on defendant's motion to suppress. **ECF No. 63**. At the outset, the Court questioned the need for an evidentiary hearing given the fact that defendant's contentions, at best, seemed to revolve around credibility issues surrounding defendant's arrest, to wit, whether or not his arrest (and the ensuing search and seizure of several items, including a firearm) occurred the way the government proffers it did. Moreover, the Court asked defendant's counsel how they intended to call into question the credibility of the agents for suppression purposes.

The government sided with this Court's interpretation as to the nature of the issue (one of pure credibility) and argued that, in any case, defendant lacked standing to seek suppression of the evidence because he failed to claim a property interest over the seized items. The government cited several First Circuit cases in support of its lack of standing argument.

On the other side of the aisle, the defense did not raise any legal grounds or cite caselaw in support of a finding of standing. Neither did defendant's counsel point to any part of the affidavit appended to the motion (or the motion itself) in support of a finding of standing. Instead, the defense argued that the government waived any standing challenge by not raising it in their response to the motion to suppress.[4] Addressing the Court's questions, the defense

---

[4] Moreover, defense's sole substantive argument deserves recognition, but for the wrong reasons. To wit, defense counsel argued that defendant had Fourth Amendment standing simply because the government charges defendant with possession of the firearm. If that were the case, then every single defendant would satisfy Fourth Amendment standard *ipso facto* and the expectation of privacy test would be superfluous. Under that lackadaisical

proffered that they would cross-examine the witness and use "documents" to presumably impeach the agents' account of the events.

Although evidentiary hearings are only required "if the movant makes a sufficient threshold showing that material facts are in doubt or dispute, and that such facts cannot reliably be resolved on a paper record[,]" the Court granted defendant the benefit of the doubt as well as an opportunity to establish standing by ordering the parties to proceed with the evidentiary hearing. *United States v. Cintrón*, 724 F.3d 32, 36 (1st Cir. 2013)(quoting *United States v. Francois*, 715 F.3d 21, 32 (1st Cir. 2013)).[5]

The government called a witness and entered several photographs into evidence. Despite the defense's initial representations to the effect that some "documents" were to be introduced, defendant only cross-examined the government's witness and presented no evidence for impeachment, standing or otherwise. *See* **ECF No. 64**.

## II.    Discussion

### A.    Standing

"The Fourth Amendment's protection against unreasonable searches and seizures extends only to those places and interests in which the defendant has a reasonable expectation

---

logic, the Court would have to ditch decades of precedent on Fourth Amendment's standing expectation of privacy discussed herein, which, for obvious reasons, the Court respectfully declines to do.

[5] The Court was under no obligation to grant defendant an evidentiary hearing, especially in light of defendant's barebones request for suppression. *See U.S. v. Francois*, 715 F.3d 21, 32 (1st Cir. 2013).

of privacy." *United States v. Lewis*, 40 F.3d 1325, 1333 (1st Cir. 1994)(citations omitted). To determine the expectation of privacy, courts must analyze "whether the movant has exhibited an actual, subjective, expectation of privacy; and [], whether such subjective expectation is one that society is prepared to recognize as objectively reasonable." *United States v. Rheault*, 561 F.3d 55, 59 (1st Cir. 2009) (citing *Smith v. Maryland*, 442 U.S. 735, 740, (1979)); *see also Katz v. United States*, 389 U.S. 347, 88 (1967). In other words, "whether… the individual thought of the place (or the article) as a private one, and treated it as such." *United States v. Aguirre*, 839 F.2d 854, 857 (1st Cir. 1988).

It is defendant's threshold burden to establish a reasonable expectation of privacy. *U.S. v. Lipscomb*, 539 F.3d 32, 35 (1st Cir. 2008)("[b]efore reaching the merits of a suppression challenge, the defendant carries the burden of establishing that he had a reasonable expectation of privacy…"). Because it is defendant's burden to establish standing before the Court even addresses the merits of a Fourth Amendment violation, defendant's claim that the government waived the standing challenge is inapposite.

Moreover, defendant claims "no interest in the items [or]… that the government seized them from him." *U.S. v. Lipscomb*, 539 F.3d at 35. Which raises an unavoidable hurdle against his request for suppression: "defendants who fail to establish or claim ownership of an item… lack a sufficient privacy interest to assert a Fourth Amendment violation." *Id.*, at 36. Absolutely nothing in defendant's affidavit or motion to suppress even hints at a claim of ownership or

interest over the seized items. In fact, defendant's motion simply states that the agents "**allegedly** found a Glock firearm… a magazine with eleven bullets, currency, three cellular telephones and a notebook." **ECF No. 45** at 2 (emphasis added). Thus, not only does defendant disown any interest over the property (which would be fatal standing-wise), he does not admit that such items even exist at this juncture. In short, defendant has failed to establish a minimum reasonable expectation of privacy. *See U.S. v. Mancini*, 8 F.3d 104, 107 (1st Cir. 1993)("a defendant who fails to demonstrate a legitimate expectation of privacy in the… item seized will not have standing to claim that an illegal search or seizure occurred.").

In light of all the above, defendant failed to meet the Fourth Amendment standing requirement by failing to establish a reasonable expectation of privacy over the seized items. Therefore, the Court need not go any further. On this ground, defendant's motion to suppress at **ECF No. 45** is thus **DENIED**.

B.    **Defendant's substantive argument for suppression**

In any event, defendant's request to suppress evidence is also unavailing on its merits. Defendant's argument boils down to the not-so-original "things [did not] happen[] the way described by the government." **ECF No. 45** at 2. Even in his affidavit, which is at best conclusory,[6] defendant only calls into questions two details of the day of his arrest: whether the

---

[6] Certainly not "sufficiently definite, specific, detailed, and nonconjectural, to enable the court to conclude that a substantial claim is presented." *United States v. Agosto-Pacheco*, 2019 WL 4566956, at *6 (D.P.R. 2019) (*quoting United States v. Calderón*, 77 F.3d 6, 9 (1st Cir. 1996)).

agents pointed their firearms at him and whether he admitted having a firearm on him. **ECF No. 51-1** at 1-2. Both allegations, challenge the existence of probable cause for the arrest and subsequent seizure of the weapon.

Even though the Court granted defendant a clearly unwarranted evidentiary hearing, he failed to provide an alternate, specific version of the events that led to his arrest and the search and seizure of the evidence. Instead, defendant's counsel simply opted (quite unsuccessfully) to impeach the government's witness. The government's witness, PRPD Agent Elí Alemán, however, did not fall for counsel's cross-examination snares. On the contrary, his testimony remained steadily consistent and, in this Court's opinion, perfectly credible and truthful.

The government's witness, PRPD Agent Elí Alemán, was one of the agents that participated in defendant's arrest and the search and seizure through which they obtained the evidence defendant now seeks to suppress. He had personal knowledge of all relevant events and confirmed in very specific ways the version of the events put forth in the affidavit attached to the criminal complaint, **ECF No. 1-1** and the Superseding Indictment, **ECF No. 40**. Specifically, he testified that pursuant to an alleged written operational plan that included several Public Housing Projects, agents entered Jardines del Paraíso in an unmarked vehicle, which was left parked nearby, and headed towards building number 25 on foot, which was a known drug

point. He was walking along Agent E. Pérez.[7] They walked to building 25 undetected. As they reached the last step of the stairs leading to Building 25, they heard from a 2-way radio near the place where defendant stood, an alert indicating that the police had been detected. Agent Alemán clearly heard someone yelling "agua" ("water")[8]. Defendant was coming out through the hallway behind the apartment on the first floor of Building 25. The police noticed he was carrying a "2-way radio" on his right hand. The agents immediately heard the message "agua" from defendant's radio. Upon noticing the two approaching agents, defendant raised his hands as soon as the agents announced themselves as "police." Although the agents never drew their weapons (wore civilian clothes and did not show their badge) defendant raised his arms and voluntarily informed them that he was armed. Once defendant raised his hands and admitted to possessing a weapon without a license, Agent Pérez pulled the weapon from defendant's waist, unloaded it and proceeded to search a bag next to defendant and read defendant his *Miranda* rights. Defendant admitted to not having a license for the firearm and added that he was in federal supervised release. Throughout the intervention, the agents continued to hear over defendant's "walkie-talkie" the alert over the police presence. The alert was transmitted by continuously stating "agua, agua."

---

[7] Aside from entering the public housing project in an unmarked vehicle, both agents were wearing "civilian clothing" and their weapons were not visible and never drawn. Neither were their badges visible.

[8] The term "agua" (water) is commonly known to alert about the police presence at a given area.

"In general terms, probable cause exists when police have sufficient reason to believe that they have come across evidence of a crime." *United States v. Paneto*, 661 F.3d 709, 714 (1st Cir. 2011). Defendant's admissions and the totality of the circumstances support a finding of probable cause in this case. *See generally U.S. v. Harris*, 403 U.S. 573, 583 (1971)("People do not lightly admit a crime… Admissions of crime, like admissions against proprietary interests, carry their own indicia of credibility—sufficient at least to support a finding of probable cause to search.")).

According to this version of the facts, which the Court finds credible at this juncture, the agents lawfully arrested defendant. Both his arrest and search and seizure of the weapon were based on probable cause. The Court need not dwell on this issue for long. After all, **defendant does not challenge** the lawfulness of the search and seizure under the facts stated by the government. He simply contends (without any testimony, evidence or even an affidavit) that the search and arrest did not occur as the agents stated it did. Although the Court granted defendant the opportunity to show otherwise, there is nothing in the record to support an alternative finding. Notably, adding to this point, defendant's cross-examination almost exclusively focused on probing the government's case and obtaining testimony of a witness that, absent the evidentiary hearing, defendant would not have had access to prior to trial.[9]

---

[9] The Court is not blind to improper defense tactics such as this one: utilizing a suppression hearing as a discovery tool. However, in this case, based on defense counsel's representations that "documents" would be introduced into evidence, the Court considered that perhaps the benefit of the doubt outweighed the undue advantage that defendant would gain from peeking at the government's case beforehand.

Therefore, even if defendant had met Fourth Amendment standing (which he did not), there is nothing on the record that supports a finding of an unreasonable search and seizure, or an illegal arrest.

### III.     Conclusion

For all the above, defendant's motion to suppress at **ECF No. 45 is DENIED**.

**SO ORDERED**.

At San Juan, Puerto Rico, on this 11th day of May, 2023.

**S/AIDA M. DELGADO-COLÓN**
**United States District Judge**